Harry C. DOTSON, Appellant,

v.

ALAMO FUNERAL HOME, Appellee.

No. 16024.

Court of Civil Appeals of Texas, San Antonio.

Jan. 12, 1979.

Rehearing Denied Feb. 21, 1979.

William B. Chenault, III, Howard E. Davis, C. Nicholas Rothe, Jr., San Antonio, for appellant.

Joe Meador, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is an appeal by Harry C. Dotson from a summary judgment that he take nothing in his suit against Alamo Funeral Home. Appellant brought suit seeking actual and exemplary damages [1] against appellee based upon alleged breach of contract, negligence and fraudulent concealment. The action is premised upon appellee's alleged failure to reclaim the body of appellant's natural father, Winford Curtiss Word, from The University of Texas Medical School at San Antonio and to conduct military funeral services and perform burial in a military cemetery. Appellee's answer consists of a general denial; the contention

that appellant's cause of action was barred by the two- and four-year statutes of limitations and the statute of frauds; and the absence of consideration to support appellant's alleged contract with appellee. The trial court in its summary judgment found that appellant's cause of action was barred by the two-year statute of limitations, Article 5526, and specifically, Subdivisions 4 and 6 thereof,[2] and decreed that appellant take nothing by his suit.

We affirm the judgment of the trial court. The record establishes as a matter of law that (1) this is a suit on an oral contract; (2) the statute of limitations was not tolled; (3) there was no fraudulent concealment by appellee; (4) the cause of action was barred by Subdivisions 4 and 6 of the two-year statute of limitations; and (5) appellee's motion for summary judgment was correctly granted.

By a number of points of error appellant asserts that the trial court erred (a) in holding that the two-year statute of limitations barred the action; (b) in not upholding appellant's affirmative defenses; and (c) in granting appellee's motion for summary judgment.

The significant factual background and pertinent dates are summarized as follows:

(a) Four or five months prior to June 30, 1972, Mr. Word and his natural son, the appellant, Harry C. Dotson, met with Cecil W. Hopkins of Alamo Funeral Home to make arrangements for the disposition of Mr. Word's remains after death.

(b) On June 30, 1972, Mr. Word died at Wilford Hall Hospital, Lackland Air Force Base, Texas, of severe brain damage.

---

1. Plaintiff asks for actual damages in the amount of $500,000 and exemplary damages of $500,000.

2. Article 5526 provides, in part:
   There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

4. Actions for debt where the indebtedness is not evidenced by a contract in writing.

6. Action for injury done to the person of another.
Tex.Rev.Civ.Stat.Ann. art. 5526, subds. 4 & 6 (Vernon 1958).

(c) On July 1, 1972, the registrar's office at the hospital called Alamo Funeral Home to come for the body.

(d) During the period July 1–6, 1972, the body was arterially embalmed preparatory to being transported to the medical school for use in the school's anatomy department.

(e) On July 1, 1972, and again on July 5, 1972, Mr. Dotson met or spoke with Mr. Hopkins to give him all the necessary forms and information, so that the Veterans Administration and the Social Security Administration could assist with expenses related to the disposing of Mr. Word's body.

(f) On July 6, 1972, the body was transported to the medical school by Alamo Funeral Home.

(g) On July 13, 1972, an itemized list of services performed by Alamo Funeral Home and charges therefor was forwarded with the appropriate claim form to the Veterans Administration regional office in Houston.

(h) Sometime in August, 1973, the body of Mr. Word was allegedly cremated at the medical school by persons unknown and disposed of in an unmarked grave.

(i) In August, 1976, Mr. Dotson contends that he met with Mr. Hopkins to determine the disposition of his father's remains. He later went to the medical school, where he was told the remains were in an unmarked grave.

(j) In January, 1977, Mr. Hopkins contends he heard from Mr. Dotson for the first time since 1972 by telephone, inquiring as to the whereabouts of his father's remains. About this time, the appellant claims he first learned that the body had been incinerated.

(k) On April 21, 1977, this action was brought.

We will separately address appellant's claims herein according to his general allegations of breach of oral contract; negligence; and fraudulent concealment.

### Breach of Oral Contract

The only written document pertaining to the contract is a statement of account from the appellee to the Veterans Administration, dated July 13, 1972, which lists charges as follows:

| | |
|---|---|
| Funeral coach service for picking up remains from Wilford Hall and transportation to Alamo Funeral Home | $ 45.00 |
| Preparation of remains for anatomical purposes | 100.00 |
| Four certified death certificates | 8.00 |
| Securing permit and death certificates | 10.00 |
| Transportation of embalmed remains to University of Texas Medical School | 45.00 |
| Total | $208.00 |

Appellee urges that this was the only contract or agreement ever involved between the parties. It is undisputed that this contract had been fully performed and that none of the consideration called for in the statement of account was paid by appellant. Appellant makes no contention that there was a written contract, but asserts in this connection that appellee orally agreed to reclaim the body of Mr. Word from The University of Texas Medical School at San Antonio and thereafter to conduct military services and supervise burial in a military cemetery. There is nothing in the record to indicate when these services were to be performed, what the charges would be, or who would pay for such additional services. It is undisputed that appellant did not have any contact with appellee or any of its employees between July 5, 1972, and sometime in August, 1976, a period in excess of four years. It further appears that appellant made no attempt to reclaim the body from the medical school.

Assuming arguendo that there was, as alleged, an oral contract to perform burial services, appellant's cause of action is barred by the two-year statute of limitations. Tex.Rev.Civ.Stat.Ann. art. 5526, subds. 4 & 6 (Vernon 1958). *See Shipp v. O'Dowd,* 454 S.W.2d 845 (Tex.Civ.App.—Waco 1970, writ ref'd, n. r. e.).[3]

---

**3.** In *Shipp v. O'Dowd,* the court found that "[p]laintiff's pleading, most liberally construed, alleges a cause of action for breach of contract.

That cause of action accrues, of course, and limitation begins to run, at the time of the breach." *Id.* at 847.

Although the services set forth in the written statement of account were performed by early July, 1972, and Mr. Word's body was by all accounts cremated in August, 1973, appellant waited until April 21, 1977, to file his suit. In order to avoid the bar of the two-year statute of limitations, appellant relies on the affirmative defenses of fraudulent concealment and estoppel to toll the running of the two-year statute of limitations. Both are affirmative defenses under which the plaintiff has the burden of coming forward with proof to support his allegations. *Weaver v. Witt,* 561 S.W.2d 792 (Tex.1977) (fraudulent concealment); *Nichols v. Smith,* 507 S.W.2d 518 (Tex.1974) (fraudulent concealment); *"Moore" Burger, Inc. v. Phillips Petroleum Company,* 492 S.W.2d 934 (Tex.1972) (estoppel). There is no such proof in the record before us, nor is there probative evidence of any facts which would toll the statute of limitations.

### Negligence

Negligence is the failure to observe a legal duty. The right of recovery for injury resulting from negligence of a defendant is based on the violation of a duty toward plaintiff. When no duty exists, no legal liability can arise on account of negligence. *McCall v. Marshall,* 398 S.W.2d 106 (Tex.1965); *Denison Light & Power Co. v. Patton,* 105 Tex. 621, 154 S.W. 540 (1913); *A. C. Burton Co. v. Stasny,* 223 S.W.2d 310 (Tex.Civ.App.—Galveston 1949, writ ref'd); 40 Tex.Jur.2d *Negligence* § 5 (1976).

Appellant's claim under a negligence theory is without merit. It is clear from appellant's pleadings and evidence that his suit is premised upon a breach of oral contract. There is nothing in the record to support any legal duty owed by appellee to appellant on any theory of negligence.

As a general rule, the statute of limitations commences to run upon a cause of action in tort from the time that the duty owing to the plaintiff was breached by the wrongful or negligent acts of the defendant, even though, in some cases, the plaintiff is ignorant of the existence of his cause of action, or although damage was not sustained until after the commission of the tort. A cause of action ordinarily arises, and the statute of limitations commences to run, immediately upon the commission of the wrong about which the complaint is made, and the running of the statute is not postponed until damage results from the wrong. *Houston Water-Works Co. v. Kennedy,* 70 Tex. 233, 8 S.W. 36 (1888).

Under the record there is no evidence to toll the statute of limitations under any theory of negligence. If there ever was any duty to furnish burial services as alleged by appellant, a party cannot sit idly by for a period in excess of four years without making any inquiry whatsoever or filing suit. The cause of action for tort, if any existed, is governed by the two-year statute of limitations and the court correctly held such cause of action was barred by limitations. *City of Vernon v. Low,* 158 S.W.2d 857 (Tex.Civ.App.—Amarillo 1942, no writ); *Blondeau v. Sommer,* 139 S.W.2d 223 (Tex.Civ.App.—Galveston 1940, writ ref'd).

### Fraudulent Concealment

We have already discussed in some detail the matter of fraudulent concealment, which is an affirmative defense to the statute of limitations under which the plaintiff has the burden of coming forward with proof to support the allegation. *Weaver v. Witt,* 561 S.W.2d 792 (Tex.1977). In order for the doctrine of fraudulent concealment to apply, it must be shown that the defendant himself had knowledge of the facts which he is alleged to have fraudulently concealed. This is true because one cannot be guilty of fraudulently concealing facts of which he has no knowledge. *Nichols v. Smith,* 489 S.W.2d 719 (Tex.Civ.App.—Fort Worth 1973), *aff'd,* 507 S.W.2d 518 (Tex.1974); *Barnard v. Thompson,* 138 Tex. 277, 158 S.W.2d 486 (1942). A fraudulent concealment in cases of this sort includes first, actual knowledge of the fact that a wrong has occurred, and second, a fixed purpose to conceal the wrong. *Carrell v. Denton,* 138 Tex. 145, 157 S.W.2d 878

**312**

(1942); *Owen v. King,* 130 Tex. 614, 111 S.W.2d 695 (1938); *City of Vernon v. Low,* 158 S.W.2d 857 (Tex.Civ.App.—Amarillo 1942, no writ). Appellant's contentions pertaining to fraudulent concealment are without merit.

We are of the opinion that the trial court correctly held there was no evidence to toll the statute of limitations, and the appellant's cause of action was barred by the two-year statute of limitations. It follows that the trial court correctly granted appellant's motion for summary judgment.

All of appellant's points of error have been considered and all are overruled. Under the record, appellee was entitled to judgment as a matter of law. The judgment of the trial court is affirmed.