**Affirmed and Opinion filed February 18, 2021.**



**In the**

# Fourteenth Court of Appeals

### NO. 14-18-00160-CV

**J. PAUL CAVER, Appellant**

**v.**

**CYNTHIA CLAYTON, Appellee**

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2014-65040**

## O P I N I O N

The issue in this appeal is whether the discovery rule applies to common-law civil-assault claims. Appellant J. Paul Caver appeals the trial court's judgment denying his motion for directed verdict and motion for judgment notwithstanding the verdict on the basis that appellee Cynthia Clayton's assault claims were barred by the statute of limitations and Clayton did not meet her burden of establishing the application of the discovery rule. We affirm.

# I. BACKGROUND

Caver was at one time married to Clayton's daughter. In September 2014, Mother's daughter filed for divorce from Son-in-Law. During the pendency of the divorce, Mother learned that Son-in-Law had made statements that he and Mother had sex. Believing those statements to be defamatory, Mother filed suit against Son-in-Law alleging defamation as her only cause of action. Son-in-Law asserted truth as an affirmative defense and gave testimony in a deposition as part of his divorce proceeding in which he provided specific details of the sexual encounter. As a result, Mother amended her petition in April 2015, alleging four causes of action: libel; slander; assault/sexual assault causing bodily injury; and assault/sexual assault based upon offensive physical contact. Mother's defamation claims were non-suited on the record just before trial.

Mother's claims of assault and sexual assault were tried to a jury. Son-in-Law testified that he and Mother had sex once in 2003. Son-in-Law recalls being at Mother's home and Mother flirting with him. Son-in-Law recalls Mother got sick that evening but does not recall Mother passing out or losing consciousness because of her illness. Several hours later, Son-in-Law entered the guest bedroom to check on Mother. He testified that in light of their behavior that night he believed she consented to his entry of the room and kissing her on the lips and touching her genitals. He did not recall any verbal communication between the two at the time.

Son-in-Law testified he returned to the guest room and kissed Mother again. He recalled that Mother responded in a manner that invited further contact. He then recalls climbing on top of her and having sex. While he does not recall whether there was any verbal communication during this encounter, he testified that Mother was an active participant and behaved in a manner consistent with consent. He

2

further testified that the next morning she approached him and stated "I don't remember anything from last night" in such a way that he understood he was not to speak of the incident again.

Mother testified that she was unaware of the alleged sexual encounter when it occurred and did not learn of the incident until her daughter's and Son-in-Law's divorce. Mother testified at trial that she was able to pinpoint the night of the sexual encounter because Son-in-Law mentioned she had been sick and that night was the only time she had been sick. Her last memory of the evening is vomiting in the toilet and waking up the next morning in the guest room.

After Mother rested, Son-in-Law moved for a directed verdict on the basis that the statute of limitations had run and the discovery rule did not apply. The trial court denied Son-in-Law's motion. After a three-day trial, eleven jurors reached a verdict finding that Son-in-Law committed assault, but not sexual assault. The jury also determined that Mother had no reason to know of the assault until 2015 and awarded $92,000 in damages to Mother.

Son-in-Law filed a motion for judgment notwithstanding the verdict. The trial court denied the motion, and signed a final judgment on the verdict. Son-in-Law filed a motion to modify or reform the final judgment and motion to disregard the verdict, which was denied by operation of law. Son-in-Law timely filed this appeal.

## II. ANALYSIS

Son-in-Law raises a single issue on appeal, asserting the trial court erred in denying Son-in-Law's motion for directed verdict and motion for judgment notwithstanding the verdict because Mother's assault claim was barred by the two-year statute of limitations. Son-in-Law argues (1) the discovery rule is not

3

applicable to claims of common-law civil assault and (2) Mother's injury was not objectively verifiable such that the discovery rule is applicable to her claim.

In appealing the denial of a motion for directed verdict and a motion for judgment notwithstanding the verdict, Son-in-Law in effect challenges the legal sufficiency of the evidence. *See Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The test for legal sufficiency is the same for summary judgments, directed verdicts, judgments notwithstanding the verdict, and appellate no-evidence review. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *See id.* at 827. Jurors are the only judges of witness credibility and the weight to give their testimony. *Id.* at 819. To sustain a challenge to the legal sufficiency of the evidence supporting a jury finding, the reviewing court must find that (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) there is no more than a mere scintilla of evidence to prove a vital fact; or (4) the evidence conclusively established the opposite of a vital fact. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 (Tex. 2004).

## A. Application of the discovery rule

Claims of common-law civil assault are subject to a two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (party must bring suit for personal injury not later than two years after day cause of action accrues). The parties do not dispute that the alleged assault occurred in 2003, more than ten years before Mother filed the underlying lawsuit. Therefore, Mother relied upon the application of the discovery rule to toll the accrual of her civil-assault claim.

The statute of limitations begins to run when a claim accrues. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). A cause of action accrues when facts come into existence that permit a plaintiff to recover. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017). Generally, in the context of a tort, this is when a wrongful act causes an injury. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721 (Tex. 2016) ("As a general proposition, a cause of action accrues when a wrongful act causes a legal injury, even if the fact of injury is not discovered until later . . . ."); *Murray*, 800 S.W.2d at 828.

The discovery rule is a doctrine that creates an exception to the general accrual rule. *Childs v. Haussecker*, 974 S.W.2d 31, 36–37 (Tex. 1998). The discovery rule has been applied in situations when it is otherwise difficult for the injured party to learn of the wrongful act. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). In cases not involving fraud or fraudulent concealment, the discovery rule will apply only when "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.* at 6; *see Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). These two elements attempt to strike a balance between the policy underlying statutes of limitations (barring stale claims) and the objective of avoiding an unjust result (barring claims that could not be brought within the limitations period). *See S.V.*, 933 S.W.2d at 6; *see also Robinson v. Weaver*, 550 S.W.2d 18, 20 (Tex. 1977). When the discovery rule applies, the cause of action accrues when a reasonably diligent and careful plaintiff knows or should have known of the wrongful act and injury. *See Haussecker*, 974 S.W.2d at 37.

B.      Is the discovery rule applicable to claims of civil assault?

Son-in-Law argues that no Texas court has ever applied the discovery rule to

a common-law civil assault claim and that at least one court has held that the discovery rule does not apply to common-law assault. *See Brothers v. Gilbert*, 950 S.W.2d 213 (Tex. App.—Eastland 1997).

At the outset, we note that *Brothers v. Gilbert* is not controlling precedent for this court. *See id.* Further, in holding that the discovery rule is not applicable to claims of common-law assault, the Eleventh Court of Appeals did not address precedent from the supreme court and instead cited to *Sanchez v. Archdiocese of San Antonio*, 873 S.W.2d 87, 90 (Tex. App.—San Antonio 1994): "An exception to the statute of limitations has been created by case law in situations where *the claimant was unable to know of [the] injury at the time of its accrual;* this exception is known as the discovery rule." *Brothers*, 950 S.W.2d at 216.[1] *Brothers* involved instances of sexually offensive harassment in the workplace, including offensive physical touching. It was undisputed that the victim was aware of the nonconsensual contact when it occurred. *Id.* The court held that the victim's assault claims were barred by the statute of limitations, stating: "[t]he 'discovery rule' is not applicable to claims of common-law assault." *Id.* We think this categorical statement too broad given the circumstances of that case, and to the extent *Brothers* can be construed as holding that, in all circumstances, a claimant must necessarily be aware of physical contact or injury when it occurs, *Brothers* is not binding on us, and we respectfully disagree.

The supreme court has held the application of the discovery rule does not focus on specific causes of action, rather it focuses on types of injury. *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 314 (Tex. 2006). "[A]pplication has been permitted

---

[1] In *Sanchez*, the Fourth Court of Appeals held the discovery rule did not apply to claims by a 57-year-old woman of sexual abuse committed by a nun when the claimant was a minor. 873 S.W.2d at 91. The court's decision was predicated on the undisputed fact that the claimant was aware of the abuse when it occurred. *Id.* at 90.

in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). The discovery rule has been applied to a variety of causes of action and situations including medical malpractice, legal malpractice, a suit for alienation of affection, and a false and libelous credit report that was unsuspected until the claimant was refused credit. *See S.V.*, 933 S.W.2d at 5 (providing list of situations in which discovery rule has been applied). Though noting that applications of the discovery rule should be "few and narrowly drawn," the supreme court has also confirmed that the discovery rule should be applied in the same manner to cases involving sexual assault, as it would apply to any other case. *Id.* at 22, 25–26.

We conclude that the discovery rule is applicable to a civil-assault cause of action provided that "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs.*, 918 S.W.2d at 456; *see S.V.*, 933 S.W.2d at 4–5.

## C.    Was Mother's injury objectively verifiable?

Mother had the burden to prove that the discovery rule applied to her claim by establishing that her injury was both inherently undiscoverable during the limitations period and objectively verifiable. *See Barker v. Eckman*, 213 S.W.3d 306, 312 (Tex. 2006). The law in Texas is well-settled that an injury is inherently undiscoverable if it is the type of injury that is not generally discoverable by the exercise of reasonable diligence during the prescribed limitations period. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998); *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011). In this appeal, Son-in-Law does not dispute the discoverability of the injury; in question is whether the injury is objectively verifiable. Therefore, we assume without deciding that Mother met her

7

burden in demonstrating her injury was inherently undiscoverable during the limitations period.

On appeal, Son-in-Law alleges that Mother failed to meet her burden in demonstrating her injury was objectively verifiable. He argues that both requirements of the discovery rule are decided on a categorical basis, *i.e.*, whether the type or class of injury qualifies rather than the case-specific injury. Therefore, he argues that the discovery rule was not available to Mother due to the type of her alleged injury.

Son-in-Law cites to three primary cases for his contention that the requirement of objective verifiability is decided on a categorial basis. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011); *Via Net*, 211 S.W.3d at 314; *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 653 (Tex. 2000).[2] However, the cases he cites focus on the question of whether the injury is inherently undiscoverable. *See Via Net*, 211 S.W.3d at 314 (whether injury is inherently undiscoverable is legal question "decided on a categorical rather than case-specific basis; the focus is on whether a type of injury rather than a particular injury was discoverable"); *Ross*, 356 S.W.3d at 930 ("The legal question of whether an injury is inherently undiscoverable is determined on a categorical basis."). It is well-settled law that the requirement for determining whether an injury is "inherently undiscoverable" is decided on a categorial basis, but that does not aid Son-in-Law's argument here. *Ross*, 356 S.W.3d at 930. None of the cases cited by Son-in-Law supports his argument that we should disregard Mother's evidence as to the objective verifiability of her injury, and categorically dismiss her injury as

---

[2] *Ross* and *Via Net* are addressed above. The third case cited by Son-in-Law addresses the statute of limitations, the discovery rule and the single-action rule in relation to asbestos-related disease. *Pustejovsky*, 35 S.W.3d at 653. It is unclear how *Pustejovsky* supports Son-in-Law's theory as the supreme court did not address the requirement of "objective verifiability" and limited its holding to asbestos-related diseases resulting from workplace exposure. *Id*.

not subject to the discovery rule.

While the supreme court has not always emphasized the requirement of objective verifiability, it applies this requirement on a case-specific basis. *S.V.*, 933 S.W.2d at 7, 15 (identifying types of evidence sufficient to provide objective verification of abuse alleged and explaining that expert testimony of plaintiff's repressed memories did not meet objective-verifiability requirement); *Computer Assocs.*, 918 S.W.2d at 456 ("the nature of the injury incurred is inherently undiscoverable *and the evidence of injury is objectively verifiable*") (emphasis added). The language used by the supreme court in addressing the objective-verifiability requirement is instructive. Courts look to the evidence—the case-specific evidence—to determine if the injury or wrongful conduct are objectively verifiable. *See S.V.*, 933 S.W.2d at 7, 15. If the type or category of the injury was the end of our inquiry on this requirement, there would be no need to look at case-specific evidence. Therefore, we conclude that we must analyze whether Mother's injury met the requirement for objective verifiability by looking to the case-specific evidence introduced at trial.

Son-in-Law next argues that even if the discovery rule were available to Mother, no physical evidence was offered or admitted at trial and "the 'touching' of one person by another, without evidence of physical injury, photographs, or a video recording, is the very definition of an injury that is not objectively verifiable." Physical evidence, however, is not the only method by which the requirement of "objective verifiability" can be satisfied. The supreme court has held that the type of evidence sufficient to demonstrate the objective-verifiability requirement includes a confession by the abuser, a criminal conviction, contemporaneous records or written statements of the abuser such as diaries or letters, medical records of the person abused showing contemporaneous physical

injury resulting from the abuse, photographs or recordings of the abuse, and an objective eyewitness's account. *S.V.*, 933 S.W.2d at 15. The objective-verifiability requirement is also satisfied when the injury is indisputable. *Id.* at 7. This court has previously held "[e]vidence of an injury is objectively verifiable if the facts upon which liability is asserted are demonstrated by direct evidence, expert testimony, or are otherwise indisputable." *Schlittler v. Estate of Meyer*, No. 14-17-00071-CV, 2018 WL 3061124, at *4 (Tex. App.—Houston [14th Dist.] June 21, 2018, no pet.) (mem. op.).

In order to address Son-in-Law's contention that Mother presented no evidence of injury, we look to the jury charge given to determine the definition of injury in this civil-assault claim. *See Osterberg v Peca*, 12 S.W.3d 31, 55 (Tex. 2000). The jury was instructed that a person commits an assault if he "intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens another with imminent bodily injury; or (3) intentionally or knowingly causes physical contact with another when he knows or should reasonably believe that the other will regard the contact as offensive or provocative."[3] As relevant here, assault occurs when there is physical contact with another and the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. Son-in-Law is liable for contacts that are offensive and provocative regardless whether they cause physical harm. *See City of Watauga v. Gordon*, 434 S.W.3d 586, 590 (Tex. 2014); *Fisher v.*

---

[3] The elements of a civil assault mirror those of a criminal assault. *See Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 801 n.4 (Tex. 2010). The instruction given to the jury was substantially similar to the definition of criminal assault in the penal code: an assault occurs if a person (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse; (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative. *See* Tex. Penal Code Ann. § 22.01(a).

10

*Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967) ("Personal indignity is the essence of an action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting.")[4]; *see also Sanchez v. Striever*, No. 14-19-00449-CV, 2020 WL 5637879, at *3 (Tex. App.—Houston [14th Dist.] Sept. 22, 2020, no pet. h.). Injury in the context of a civil-assault claim includes unwanted, offensive, and provocative physical contact.

In this case, there was direct and indisputable evidence of physical contact between Son-in-Law and Mother. Son-in-Law testified that he entered the guest room in which Mother was sleeping on the night in question. He testified that he reached under Mother's robe and touched her genitals. He also testified that he later returned to the guest room, kissed Mother and then engaged in sex with Mother. In turn, Mother did not dispute that the physical contact or sexual encounter occurred. She testified that she did not recall any physical contact, but that if it did occur, it was not consensual. Mother's testimony satisfied her burden of demonstrating that the physical contact with Son-in-Law was offensive and provocative. The testimony at trial is legally sufficient to support a finding that the physical contact in question occurred and Mother's injury is objectively verifiable.

Son-in-Law further argues his testimony only establishes that the contact was consensual and cannot be used to prove the requirement of objective verifiability. But Son-in-Law's testimony establishes that physical contact did occur, and the jury was not bound by Son-in-Law's characterization of the physical contact. *City of Keller*, 168 S.W.3d at 820 ("It is the province of the jury to resolve conflicts in the evidence."). Son-in-Law also argues that he should not have to

---

[4] Texas caselaw uses the terms "assault," "battery," and "assault and battery" interchangeably, and the supreme court has stated it intends no distinctions among these terms. *Waffle House, Inc.*, 313 S.W.3d at 801 n.4.

choose between asserting a statute-of-limitations defense or defending his actions as consensual. Son-in-Law offers no authority to support this argument, nor did he seek any limitation instruction on his testimony at trial. Tex. R. Evid. 105(a). Therefore, Son-in-Law's testimony at trial was admissible for all purposes. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000) (court of appeals properly upheld admissibility of evidence for any purpose when party failed to request limiting instruction at trial); *Gabriel v. Lovewell*, 164 S.W.3d 835, 844–45 (Tex. App.—Texarkana 2005, no pet.) (in absence of limiting instruction, impeachment testimony admissible for all purposes).

Applications of the discovery rule should be "few and narrowly drawn," and likewise our holding in this case is confined to the unusual facts presented by the testimony in this case. *S.V.*, 933 S.W.2d at 25. Because offensive and unwanted physical contact forms the injury in this civil-assault cause of action, Mother met her burden in demonstrating her injury is objectively verifiable. We overrule Son-in-Law's sole issue on appeal.

### III.  CONCLUSION

We affirm the trial court's judgment as challenged on appeal.

/s/  Charles A. Spain
Justice

Panel consists of Chief Justice Christopher and Justices Jewell and Spain.